UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD RAY HORNE,

                    Petitioner,

v.
                              Case No: 2:07-cv-751-FtM-33DNF
UNITED STATES OF AMERICA,                 2:05-cr-45-FtM-33DNF

                    Respondent.

_____/

## ORDER OF DISMISSAL

This cause comes before the Court pursuant to Defendant Donald Ray Horne's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Doc. # 1) and accompanying Memorandum of Law (Civ. Doc. # 2), both filed on November 15, 2007. The Government filed a response in opposition to the Section 2255 motion (Civ. Doc. # 8) on February 5, 2008. For the reasons that follow, the Section 2255 motion is denied.[1]

## I.   Facts Leading to Arrest

The following statement of facts is taken from Horne's Presentence Investigation Report ("PSR"), as reported by the Office of the United States Attorney, the Bureau of Alcohol, Tobacco, and Firearms, and the Fort Myers Police Department ("FMPD"):

_____

[1] Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, this Court has determined that an evidentiary hearing is not necessary for the adjudication of this motion. No hearing is required when the record establishes conclusively that a Section 2255 motion lacks merit. United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

On July 20, 2004, a FMPD officer was on foot patrol at the Palm Grocery Store located at 1936 Palm Avenue, in Fort Myers, Florida, an area known for an increase in criminal activity in the parking lot of the store.  The officer noticed an odor of marijuana emanating from a vehicle parked on the side of the building.  As the officer approached, a female exited the vehicle and began to walk away.  Donald Ray Horne was seated in the driver's seat, and told the officer the female had just been smoking marijuana.

The officer detained Horne, who initially identified himself as Donald Coleman. As the officer attempted to pat down Horne, he fled on foot.  Officers finally apprehended Horne, who admitted he fled because he had a cocaine base pipe in his pocket.  Officers found the pipe containing cocaine residue.  Officers also found a plastic bag containing a white substance appearing to be cocaine, but the substance tested negative for cocaine or heroin.  Horne admitted the substance was not cocaine. Officers found two live Winchester 12 gauge shotgun shells in Horne's right pocket. . . . ATF agents determined the shotgun shells were manufactured in East Alton, Illinois.

(PSR at ¶¶ 5-7).

## II. Procedural History

On April 27, 2005, the grand jury returned a one-count indictment against Horne (Crim. Doc. # 1).  The indictment charged that Horne, "being a person convicted of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess in and affecting commerce ammunition, namely two rounds of Winchester 12 gauge shotgun ammunition" in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[2]   (Crim. Doc. # 1 at 1, 4).   The

---

[2] 18 U.S.C. § 922(g) makes it unlawful for any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign

indictment set forth twelve of Horne's previous convictions, namely: (1) Burglary of a Structure and Dealing in Stolen Property; (2) Grand Theft; (3)Grand Theft; (4) Grand Theft Auto; (5) Sale of a Controlled Substance in Lieu of Controlled Substance; (6) Burglary of a Structure; (7) Burglary of a Conveyance; (8) Possession of Cocaine; (9) Uttering a Forged Instrument; (10) Possession of Cocaine with Intent to Sell or Deliver; (11) Possession of Cocaine; and (12) Possession of a Controlled Substance. (Crim. Doc. # 1 at 2-4).

On September 28, 2005, Horne entered a plea of guilty to the indictment before United States Magistrate Judge Douglas N. Frazier without a plea agreement. (Crim. Doc. ## 30-32). The undersigned accepted Horne's plea of guilty on October 7, 2005. (Crim. Doc. # 33). Horne was sentenced on December 28, 2005, to imprisonment of 180 months to run consecutively with the State Court case; supervised release of 60 months; and a special assessment of $100. (Crim. Doc. # 35). Judgment was entered against Horne on January 9, 2006, reflecting Horne's sentence. (Crim. Doc. # 36). On the same day, Horne filed a Notice of Appeal to the United States Court

---

commerce."

Pursuant to 18 U.S.C. § 924(e)(1), any person who violates § 922(g) and has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another" shall be fined and imprisoned "not less than fifteen years." In addition, the court is prohibited from suspending the sentence or granting a probationary sentence with respect to the conviction under § 922(g).

of Appeals for the Eleventh Circuit. (Crim. Doc. # 37).

On appeal, Horne raised two issues: (1) § 922(g) is unconstitutional because it does not explicitly require a substantial effect on interstate commerce; and (2) the district court erred in applying the fifteen-year mandatory minimum sentence under § 924(e). (Crim. Doc. # 52 at 3-4). The Eleventh Circuit quickly dispensed with the first argument, pointing out that the same constitutional challenge was raised and rejected by the Court in United States v. Scott, 263 F.3d 1270, 1273-74 (11th Cir. 2001) (holding that a "minimal nexus" to interstate commerce is sufficient). (Crim. Doc. # 52 at 3-4).

Regarding the second argument, Horne raised several grounds for error in the district court's application of § 924(e). Horne first asserted that there was a jurisdictional defect because three predicate convictions are necessary to trigger § 924(e), and only two of the felonies stated in the indictment met the criteria of § 924(e). (Crim. Doc. # 52 at 4). The Eleventh Circuit rejected this argument, reasoning that because § 924(e) is a sentence-enhancement provision and not a separate offense, Horne's prior convictions are only relevant to sentencing and need not be alleged in the indictment. (Crim. Doc. # 52 at 5). To meet jurisdictional requirements, the indictment must sufficiently charge the offense to which Horne pled guilty, not the requisites for enhancement under § 924(e). Additionally, Horne was precluded from challenging

-4-

his conviction based on an allegation that there was an insufficient factual basis to support application of § 924(e) because such non-jurisdictional arguments are waived by a knowing and voluntary guilty plea.  (Crim. Doc. # 52 at 5-6).

Horne further argued that the court improperly looked beyond the convictions stated in the indictment in applying § 924(e) to enhance his sentence.  The Circuit Court pointed to established precedent holding that prior convictions do not need to be cited in the indictment to sentence the defendant as an armed career criminal.  (Crim. Doc. # 52 at 6).  For these reasons, Horne's conviction was affirmed.

## III. **<u>Grounds for Section 2255 Motion</u>**

In his Section 2255 motion, Horne asserts that his guilty plea is invalid because it was not given voluntarily, knowingly, and intelligently, and that counsel was ineffective because (1) counsel promised Horne that he would not be considered a career offender and would not be sentenced to more than ten years imprisonment if he pled guilty; (2) counsel failed to raise <u>Apprendi</u>, <u>Booker</u>, and <u>Shepard</u> arguments to oppose enhancement of Horne's sentence; (3) counsel failed to assert a Fourth Amendment claim and request a suppression hearing; (4) counsel failed to raise the factors set forth in 18 U.S.C. § 3553(a)(1)-(7) at Horne's sentencing; and (5) counsel failed to request a mental examination of Horne to determine whether he was capable of understanding the nature and

consequences of his guilty plea.[3]   (Civ. Doc. # 2 at 8-29).

## IV.   Timeliness and Cognizability of Section 2255 Motion

Pursuant to § 2255(f), a motion to vacate must be filed within one year from the date on which the conviction becomes final.   28 U.S.C. § 2255(f)(1) (2006).   If the defendant's sentence is affirmed on appeal, then the judgment becomes final after the ninety-day period for filing a petition for writ of certiorari expires.   Clay v. United States, 537 U.S. 522, 527 (2003).   The Eleventh Circuit entered judgment as to Horne's appeal on November 22, 2006; therefore, Horne's conviction is considered final as of February 20, 2007.   (Crim. Doc. # 52 at 1).   Horne filed his Section 2255 motion on November 15, 2007.   Thus, his 2255 motion is timely.

Generally, if a defendant does not assert claims on direct appeal, he is not permitted to assert those claims on collateral attack unless he can show cause and prejudice.   Massaro v. United States, 538 U.S. 500, 504 (2003).   However, a claim for ineffective assistance of counsel may be raised for the first time in a collateral proceeding under § 2255.   Id.   To the extent that

---

[3] In his 2255 motion, Horne raises six grounds for vacating his sentence.  However, his first and second arguments both allege that his guilty plea was not given voluntarily, knowingly, and intelligently and defense counsel was deficient because counsel promised him that if he pled guilty, he would not be sentenced as a career offender and would receive a sentence of no more than ten years.  (Doc. # 2 at 1-7).  Thus, Horne's first two arguments will be considered together.

Horne's motion asserts ineffective assistance of counsel, his claims are cognizable under § 2255.

**V.**   **Legal Standard**

Proving ineffective assistance of counsel is a difficult task. To prevail on an ineffective assistance of counsel claim, Petitioner must meet the test established by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).   In <u>Sims v. Singletary</u>, the Eleventh Circuit evaluated ineffective assistance of counsel under <u>Strickland</u>:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.   In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.   According to <u>Strickland</u>, "First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

155 F.3d 1297, 1305 (11th Cir. 1998) (quoting <u>Strickland</u>, 466 U.S. at 687).

Courts must "indulge [the] strong presumption" that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u> 466 U.S. at 689-90.   Given the presumption that counsel offered competent assistance, the defendant's burden is a heavy one.   <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir.

2000)(en banc).  "Because Counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Id.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process.  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  The first prong of Strickland remains the same in that the attorney's conduct must fall within the range of reasonable conduct.  Id.  However, "counsel owes a lesser duty to a client who pleads guilty . . . counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984).  To impart such an understanding to the defendant, counsel must simply offer his informed opinion, based on an independent review of the facts, circumstances, pleadings and laws involved, as to the best course to be followed in protecting his client's interest.  Id.

In the context of guilty pleas, the second prong of the Strickland test requires the defendant to show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.  Resolution of the "prejudice" inquiry often

depends on the availability of evidence or a defense that likely would have changed the outcome at trial.  <u>Id.</u>

**VI.** <u>**Analysis**</u>

    **A.   Grounds 1 & 2: Existence of a Bargain Outside of the Record**

Horne alleges that defense counsel's performance was deficient because he promised Horne that, in exchange for his guilty plea, he would not be sentenced as a career offender and that he would receive at most a ten-year sentence. (Civ. Doc. # 2 at 9).  He further alleges that counsel advised Horne not to tell the court about the promise "because that agreement had been made behind closed doors with counsel and the government (U.S. Attorney's Office)." (Civ. Doc. # 2 at 1).  Horne claims that if he had known that counsel's promise was "a deliberate false promise," he would have told the Court about the agreement, and "had he known he would not receive 10 years, he would have proceeded to trial."  (Civ. Doc. # 2 at 8, 10).  Thus, Horne contends that his plea was involuntary, unintelligent, and unknowing because defense counsel's "lies" caused Horne to be ignorant of the consequences of his guilty plea. (Civ. Doc. # 2 at 14).

Ground one has no merit.  At Horne's change of plea hearing before the United States Magistrate Judge, the Court informed Horne that the count to which he was pleading guilty carried a mandatory minimum sentence of fifteen years and a maximum of life, without

parole.  (Crim. Doc. # 45 at 7).  The Court then stated:

> At this point it's unlikely that your attorney can be
> specific as to the guideline range which will apply
> because he doesn't have all the necessary information.
> He hasn't seen the presentence report.  Do you understand
> you'll not be able to withdraw your plea of guilty on the
> ground that any prediction he may have made as to the
> guideline range or the sentence in this case proves to be
> inaccurate?

(Crim. Doc. # 45 at 9).  Horne answered, "Yes."  (Crim. Doc. # 45

at 9).

The Magistrate Judge also questioned Horne regarding the

voluntary nature of his plea:

> The Court:      Has anyone done anything which you
>                 consider to be wrong or unfair to get you
>                 to plead guilty to this charge?
> The Defendant: Not that I know.
> The Court:      Have there been threats, coercion or
>                 improper pressure of any kind placed on
>                 you to get you to plead?
> The Defendant: No, sir.

(Crim. Doc. # 45 at 7).

The Court then asked the attorneys whether either were aware

of "any verbal promises or representations not contained in writing

that have a bearing" on Horne's plea, and both attorneys answered,

"No." (Crim. Doc. # 45 at 11).  Horne then swore to the Court that

he understood the possible penalties which would apply to him if he

pleaded guilty to the charge.  (Crim. Doc. # 45 at 11).  The Court

thoroughly explained to Horne the rights that he was relinquishing

and asked Horne if he still wanted to plead guilty, after "[h]aving

heard [the] explanation of the effect of a plea of guilty, and its

affect on your rights," and Horne answered, "Yes." (Crim. Doc. # 45 at 19).

Before hearing Horne's plea, the Court asked Horne whether he had anything to tell or ask the Court, or his attorney, that might bear on his decision to plead guilty, and Horne responded, "No, sir." (Crim. Doc. # 45 at 19). After Horne swore that he was freely and voluntarily entering a plea of guilty to the charge, the Court affirmed that Horne's plea was "knowingly, intelligently and voluntarily made", and was "not the result of any force, threats or promises." (Crim. Doc. # 45 at 19).

A defendant's statements at a Rule 11 colloquy, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity," and a defendant bears a heavy burden to show his statements were false. Id.; United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). Subsequent contradictory allegations unsupported by specific evidence are subject to summary dismissal. Blackledge, 431 U.S. at 74.

Horne has presented no specific evidence to support his current allegations and the record affirmatively contradicts Horne's claim that he pled guilty because defense counsel made false promises that Horne's sentence would not be enhanced as an

-11-

armed career offender and that he would receive no more than a ten-year sentence if he pled guilty.   At the change of plea hearing, Horne knew that his attorney did not have "all the necessary information" to predict his sentence range and that he would not be able to withdraw his plea based on any predictions his counsel may have made.  (Crim. Doc. # 45 at 9).   Horne knew that the statute under which he was charged had a mandatory minimum sentence of fifteen years.  (Crim. Doc. # 45 at 7).

Further, Horne swore that he had not been threatened, coerced, or pressured to plead guilty.   Thus, Horne has not met his burden to show that his sworn statements at his change of plea hearing – that he had not been induced to plead guilty by promises or assurances from anyone and that he understood the charges and penalties he faced – were false.

In addition, at Horne's sentencing hearing the Court asked Horne and his attorney if they had any objections to the probation officer's application of the sentencing guidelines or the factual statements made in the PSR.  After Horne's counsel responded that there were no objections, the Court adopted the statements in the PSR as findings of fact and stated that the applicable sentencing guidelines in this case were a total offense level of 30, criminal history category of VI, and a sentencing range of 180 to 210 months imprisonment.  (Crim. Doc. # 46 at 4).   The Court then allowed Horne to make a voluntary statement to the Court, in which he

asserted in part: "I understand the regular offense is a level 24 for the possession of ammunition. Okay, with my -- with the sentences and my conviction, it goes to a level, category 6. I can -- you know, I understand that. But if any way you can -- I can get sentenced without an enhancement because of that, you know, I really appreciate it because I mean, for a bullet, 15 to life sentence?" (Crim. Doc. # 46 at 6).

Horne's statement to the Court at sentencing confirms that he knew he was facing a minimum sentence of fifteen years and that his sentencing range had been enhanced based upon his prior convictions. Yet, even at that point, Horne did not mention any promises made by defense counsel, nor did he indicate that he wanted to withdraw his guilty plea. Horne's conduct in no way supports his current assertion that he would have told the Court about the deal and would not have pled guilty if he had known that his counsel's promises were false and that he might be sentenced to more than ten years.

The record evidence contradicts Horne's allegations that his counsel was ineffective because he induced Horne to plead guilty by making false promises of a lesser sentence. The record also supports the Court's finding that Horne's guilty plea was given knowingly, intelligently, and voluntarily. Furthermore, Horne has not shown prejudice. Horne has not shown a reasonable probability that the outcome would have been different but for defense

counsel's performance because his sworn statements that he understood the sentence he was facing and that no one induced him to plead guilty negate his allegation that he would have proceeded to trial if he had known that defense counsel's promise of a ten-year sentence was false.   Therefore, Horne is not entitled to relief on grounds one or two.

**B. Ground 3: <u>Shepard</u>, <u>Booker</u>, and <u>Apprendi</u> Arguments**

Horne first claims that defense counsel was ineffective because he did not object to the Court's application of the sentencing guidelines to sentence Horne as a career offender based on prior convictions that were not included in the indictment and were not proven to a jury beyond a reasonable doubt, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>United States v. Booker</u>, 543 U.S. 220 (2005).[4]   (Civ. Doc. # 2 at 16-17).   Horne also asserts that counsel should have raised a <u>Booker</u> claim because the Court sentenced him under a "mandatory guideline system" when the sentencing guidelines are now advisory, not mandatory.[5]   (Civ. Doc. # 2 at 18).

---

[4] In <u>Booker</u>, the Supreme Court upheld its ruling in <u>Apprendi</u> that, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." <u>Booker</u>, 543 U.S. at 244.

[5] The <u>Booker</u> Court also held that mandatory application of the sentencing guidelines violates the Sixth Amendment right to a jury trial and therefore courts must apply the guidelines in an advisory fashion.   <u>Booker</u>, 543 U.S. at 222-225.

As an initial matter, Horne's assertion that the Court applied the sentencing guidelines to sentence him as a "career offender" based on his prior convictions is technically incorrect.  Horne was not sentenced as a career offender under U.S.S.G. § 4B1.1, but as an "armed career criminal" under 18 U.S.C. § 924(e).[6]  (PSR at ¶ 24).  If a defendant is found to have violated the Armed Career Criminal Act, 18 U.S.C. § 924(e), which can only occur if he has three or more qualifying prior convictions, he is subject to a mandatory minimum sentence of fifteen years.  Therefore, although the sentencing guidelines were not implicated in computing the low end of his sentencing range, Horne is generally correct in that three of his prior convictions were used in determining his minimum sentence.

As to the upward limit of Horne's sentencing range, that number was determined based on application of the sentencing guidelines and upon consideration of Horne's prior convictions. The PSR details the process used to determine Horne's sentencing range.  Under U.S.S.G. § 2K2.1, a base level of 24 is to be applied if the defendant violates § 924(e) "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  Based on three prior controlled substance convictions, Horne was assigned an

---

[6] The PSR specifically indicates that Horne "is not a career offender as defined at U.S.S.G. § 4B1.1."  (PSR at ¶ 24).

offense level of 24.   (PSR at ¶ 15).

However, because Horne was considered an armed career criminal
under 18 U.S.C. § 924(e), application of § 4B1.4(b)(3)(B) of the
sentencing guidelines raised Horne's offense level to 33.   (PSR at
¶¶ 24-25).   After a downward adjustment of three points for
acceptance of responsibility, the Probation Office arrived at a
final offense level of 30.   (PSR at ¶¶ 26-27).   The Probation
Office also assigned Horne a criminal history category of VI, based
on twenty-one prior offenses of which Horne was adjudicated guilty.
(PSR at ¶¶ 28-52).

Horne's argument that his attorney should have objected to the
Court's consideration of prior convictions in determining his
sentence because they were not proven before a jury is unfounded
because it has been clearly established that the government need
not prove to a jury beyond a reasonable doubt that a defendant had
prior convictions for the convictions to be used to enhance a
sentence.  United States v. Orduno-Mireles, 405 F.3d 960, 962 (11th
Cir. 2005) (citing Booker, 543 U.S. at 244).   Nor does an offense
need to be listed in the indictment to be used to support an
enhanced sentence or for the defendant to be sentenced as an armed
career criminal.[7]  United States v. Wade, 458 F.3d 1273, 1278 (11th
Cir. 2006) (citing Almendarez-Torres v. United States, 523 U.S.

_____

[7] This same argument was raised by Horne and rejected by the
Eleventh Circuit on direct appeal.  (See Crim. Doc. # 52 at 5).

224, 226-27 (1998)).

Horne's assertion that the Court applied the sentencing guidelines in a mandatory fashion in violation of <u>Booker</u> is similarly erroneous. The PSR states that, "In accordance with <u>United States v. Booker and Fanfan</u>, the Court must consider the advice of, but is not bound by, the federal sentencing guidelines." (PSR at ¶ 14). Likewise, at Horne's sentencing hearing, the Court referenced the advisory nature of the sentencing guidelines before rendering judgment on Horne's sentence. (Crim. Doc. # 46 at 14-16). The only mandatory element of Horne's sentence was the fifteen-year minimum under § 924(e), which is not subject to a <u>Booker</u> analysis. <u>See</u> <u>United States v. Cobia</u>, 41 F.3d 1473, 1475 (11th Cir. 1995) (holding that sentence enhancement under § 924(e) is mandatory and not subject to the discretion of the sentencing court).

Horne's final argument under ground three is that counsel was ineffective due to his failure to object to the Court's reliance on "police complaints" and "nothing else" in determining whether to enhance Horne's sentence, in violation of <u>Shepard v. United States</u>, 544 U.S. 13 (2005).[8]  (Civ. Doc. # 2 at 15). However, Horne has offered no evidence to support this claim, and a review of the

---

[8] In <u>Shepard</u>, the Supreme Court held that a sentencing court may not rely on police reports or complaint applications to determine whether a prior offense constitutes a qualifying conviction under the Armed Career Criminal Act. <u>Shepard</u>, 544 U.S. at 21-23.

record shows that the enhancement criteria were applied only to past criminal convictions. (See PSR ¶¶ 7-8, 15, 27-50). Thus, this assertion is equally unfounded.

Because Horne has failed to establish that any violations of Apprendi, Booker, or Shepard occurred, he cannot assert that defense counsel's conduct was unreasonable in not voicing objections on those grounds. Likewise, Horne cannot show that the outcome of the case would have been any different if defense counsel had voiced those unfounded objections.

## C.   Ground 4: Illegal Search and Seizure

Ground four alleges that defense counsel was ineffective because he did not request a suppression hearing regarding the "illegal search and seizure of the Petitioner and of the vehicle" in violation of Horne's Fourth Amendment rights. (Civ. Doc. # 2 at 20). Horne claims that the police officer smelled marijuana and then came up to Horne's car and, "[w]ithout any exigent circumsatnces [sic], a warrant and/or probable cause," demanded that Horne get out of the vehicle and searched both Horne and his vehicle. (Civ. Doc. # 2 at 20). Therefore, Horne claims that counsel should have sought to suppress any evidence obtained as a result of that illegal search and seizure. (Civ. Doc. # 2 at 24).

Where a claim of ineffective assistance of counsel is based on an allegation that defense counsel failed to raise a Fourth Amendment claim, the defendant must "prove that his Fourth

-18-

Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). The Court finds that the facts in this case establish that the evidence used to charge Horne was obtained pursuant to a lawful search of Horne and his vehicle and thus, Horne cannot prove actual prejudice in the form of a meritorious Fourth Amendment claim.

The PSR reflects that the police officer approached Horne's car upon smelling an odor of marijuana coming from the vehicle. (PSR at ¶ 5). Horne admits that the woman in the car with him was smoking marijuana and that she walked away when the officer approached. (Civ. Doc. # 2 at 20). Pursuant to Terry v. Ohio, 392 U.S. 1, 21 (1968), police may search a vehicle to investigate a reasonable suspicion that persons are engaged in criminal activity, based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The odor of marijuana emanating from a vehicle establishes a reasonable suspicion of criminal activity to conduct a search of that vehicle. See United States v. Griffin, 109 F.3d 706, 708 (11th Cir. 1997) (finding warrantless search of car valid because strong odor of marijuana emanated from car); United States v. Garcia, 592 F.2d 259, 260 (5th Cir. 1979) (noting that probable cause to search is provided by the odor of marijuana).

The search of Horne's person was also supported by probable cause. Upon detecting the odor of marijuana, the officer approached Horne and asked for his name and driver's license. Horne identified himself as Donald Coleman and stated that he had no identification. (PSR at ¶ 6; Crim. Doc. # 28 at 5). When the officer ran the name given by Horne, there was no record of a driver's license with that name. (Crim. Doc. # 28 at 5). The smell of marijuana, together with Horne's use of a name that had no record of a driver's license and his presence in a parking lot that had seen a recent increase in criminal activity, provided the police officer with the reasonable, articulable suspicion that Horne presented a danger to the officer's safety. See Bryan v. Spillman, 217 Fed. Appx. 882, 885 (11th Cir. 2007) (unpublished) (holding that a "Terry pat-down" is permissible where the "totality of circumstances" evidences reason to be concerned for the officer's safety).

Because the record in this case does not support a meritorious Fourth Amendment claim, Horne's ineffective assistance of counsel claim fails on this ground.

**D.   Ground 5: Consideration of Factors in 18 U.S.C. § 3553(a)**

As his fifth ground, Horne asserts that defense counsel was ineffective because he did not recommend to the Court consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). (Civ. Doc. # 2 at 26). This claim is completely groundless because the

record establishes that defense counsel did argue the § 3553(a) sentencing factors to the Court at Horne's sentencing hearing. Counsel reviewed Horne's history, pointing out favorable events such as graduation from high school, service in the armed forces, and previous attempts at rehabilitation, as well as negative impacts such as drug addiction. (Crim. Doc. # 46 at 7-10). Counsel also attempted to downplay the seriousness of the instant offense by reference to its nature and circumstances. (Crim. Doc. # 46 at 8-9). Finally, counsel asked the Court to consider Horne's drug addiction and physical illnesses when determining his sentence and to impose "the lowest sentence possible." (Crim. Doc. # 46 at 9-10).

At the time of sentencing, the Court made specific reference to its consideration of the factors contained in 18 U.S.C. § 3553(a)(1)-(7). (Crim. Doc. # 46 at 16). Thus, Horne cannot argue that defense counsel was ineffective in failing to argue these factors, and he is not entitled to relief on ground five.

### E. Ground 6: Motion for Psychiatric Evaluation

Finally, Horne alleges that counsel was deficient because he failed to recommend to the Court that Horne undergo a psychiatric evaluation to determine whether he was capable of understanding the charges against him and the consequences of entering a guilty plea. (Civ. Doc. # 2 at 28). Horne asserts that he requested a psychiatric evaluation but counsel never provided that information

-21-

to the Court.

Counsel is not deficient for failing to file a motion that is not legally supportable and would be unsuccessful. <u>United States v. Costa</u>, 691 F.2d 1358, 1363 (11th Cir. 1982). There is nothing in the record to support that Horne was incapable of understanding the nature and consequences of his guilty plea or that counsel's failure to move for a psychiatric evaluation falls outside the range of competency expected in these circumstances.

Horne alleges that he was unable to understand "what was going on at his plea hearing and sentence [sic] due to his GPA of 2.60, and his drug addicted condition and mental condictions [sic]." (Civ. Doc. # 2 at 28). The record shows, however, that Horne graduated from high school with a GPA of 2.60, was active in football and basketball, and served three years in the United States Army and three years in the National Guard. (PSR at ¶¶ 70-71; Crim. Doc. # 46 at 7-8). The "Mental and Emotional Health" section of Horne's PSR reflects only that Horne recalled undergoing routine psychological testing at state prison, with no reported diagnoses, and that Horne reported lack of focus and interest during school age years. (PSR at ¶ 67).

At his change of plea hearing on September 28, 2005, Horne told the Court that he was suffering from no physical ailments that might interfere with his ability to think or concentrate at the hearing, and that he speaks, reads, and writes English sufficiently

to have read the indictment and understand the charge. (Crim. Doc. # 45 at 3-4). Horne also attested that he has never been under the care of a psychiatrist and that his competency has never been questioned. (Crim. Doc. # 45 at 4-5). In addition, although Horne admitted to drug and alcohol addiction, he swore that he had not used any drugs or alcohol since he was incarcerated on or about July 20, 2005. (Crim. Doc. # 45 at 5). Finally, Horne swore that he had sufficiently reviewed the charges against him with defense counsel and that he was satisfied with his services. (Crim. Doc. # 45 at 6). After plaintiff and defense counsel both denied that there was "any question as to the defendant's competency to plead guilty," the Court found Horne competent to plead guilty. (Crim. Doc. # 45 at 6-7).

Based on the record evidence in this case, it is apparent that counsel was not deficient in failing to request a psychiatric evaluation of Horne. Thus, Horne is not entitled to relief as to his sixth ground for ineffective assistance of counsel.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Donald Ray Horne's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Civ. Doc. # 1) is **DENIED**. The Clerk is directed to enter judgment against Horne in the civil case and to close that case, and to file this Order in both the criminal and the civil cases.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS **FURTHER ORDERED** that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Fort Myers, Florida, this 20th day of October, 2008.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

-24-

copies to:

All counsel of record
Petitioner